IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-cr-128-MEF |
| | ) | (WO – Publish) |
| WILLIAM RANDALL PETTIE | ) | |

**MEMORANDUM OPINION AND ORDER**

Following a guilty plea, Defendant William Randall Pettie ("Pettie") was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At the sentencing hearing, defense counsel raised the objection that applying enhancements under §§ 2K2.1(b)(6) and 3A1.2(c) of the United States Sentencing Guidelines ("U.S.S.G.") would constitute impermissible double-counting. The Court disagreed and applied these enhancements cumulatively to determine Pettie's final sentence of seventy-two (72) months. The Court explains herein the reasons for this decision.

**I. BACKGROUND**

On November 18, 2012, Butler County Sheriff's deputies responded to 11504 McKenzie Grade Road regarding threats of suicide. Pettie's aunt, Shirley Green ("Green"), had called 911 because she feared Pettie would kill himself. Green, who owned the trailer where Pettie was located, reported to 911 operators that Pettie had threatened suicide, had complained that he was in pain, and had told her that it was "time to go."

Sheriff's deputies, who were driving marked patrol cars and wearing police uniforms, arrived and spoke with Pettie's uncle. The uncle informed them that Pettie was barricaded inside the trailer with a shotgun and was threatening to kill himself. As deputies spoke with the uncle, Pettie walked out of the front door of the trailer with a Snake Charmer II .410 caliber shotgun and fired a shot in the air. Pettie then walked back into the trailer as the deputies and Pettie's uncle retreated to a distance of approximately twenty-five yards from the trailer.

Pettie then called his mother and told her to make the deputies leave or he would shoot them and then kill himself. Deputies attempted to negotiate with Pettie for his surrender, but were unsuccessful. Pettie then came out of the trailer and fired a second shot, this time at the deputies. The shot hit near the hood of a patrol car as one deputy sat inside the car. Pettie then engaged in a seven-hour standoff with police, where he came in and out of the trailer while threatening to kill himself. Finally, SWAT team members fired tear gas into the trailer, which resulted in Pettie walking out of the trailer unarmed and surrendering.

On November 27, 2012, the U.S. Bureau of Alcohol, Tobacco, and Firearms conducted an interview with Pettie during which he admitted to possessing a shotgun and to firing it twice during the November 18 incident. Pettie claimed, however, that he was unaware law enforcement was present when he fired the shots. Upon further investigation, it was learned Pettie had been convicted previously of two felonies: murder in 1992 and promoting prison contraband in 2006. As a result, Pettie was charged with

being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and pled guilty to that charge.[1]

## II. DISCUSSION

The applicable guideline for offenses in violation of 18 U.S.C. § 922(g)(1) is U.S.S.G. § 2K2.1.  That section provides a four-level enhancement to a defendant's base offense level if the defendant used or possessed a firearm in connection with another felony offense.  In addition to this enhancement, § 3A1.2(c) provides a six-level upward adjustment to a defendant's offense level when the victim is law enforcement personnel and the defendant knows or has reason to know the victim was an officer of the law.  Application Note 4 in the Commentary for § 3A1.2 further states that subsection (c) applies in circumstances synonymous to aggravated assault against a law enforcement officer that occur in the course of, or in immediate flight following, another offense.

In this case, the Court applied a four-level enhancement to Pettie's offense level pursuant to § 2K2.1(b)(6)(B) based on Pettie's use or possession of a firearm in connection with a felony offense, which in this case was aggravated assault.  The Court also applied a six-level increase under the victim-related adjustment pursuant to § 3A1.2(c) because Pettie acted in a way that created a substantial risk of serious bodily injury towards a law enforcement officer when he fired a shotgun at the Sheriff's deputies.  As previously noted, Pettie's counsel objected to the application of an enhancement and adjustment under §§ 2K2.1(b)(6)(B) and 3A1.2(c) on the grounds that

---

[1] Pettie was also charged separately in state court with three counts of attempted murder for firing at the Sheriff's deputies during the November 18, 2012 incident.

they resulted in "double-counting", or, in other words, that the application of both provisions increased Pettie's sentence twice based on the same conduct. At sentencing, the Court disagreed for the following reasons.

Comment 4 to § 1B1.1 provides that enhancements in Chapter Two of the guidelines are to be applied cumulatively with adjustments under Chapter Three. The guidelines also explain that the same conduct may trigger the application of both an enhancement under Chapter Two and an adjustment under Chapter Three. *See* U.S.S.G. § 1B1.1, cmt. 4 (2000). Indeed, the guidelines indicate that enhancements and adjustments are applied cumulatively unless there is an instruction to the contrary. *See id*.

The Eleventh Circuit Court of Appeals has come to the same conclusion. In *United States v. Jackson*, the Court applied a presumption that the "'Commission intended to apply separate guideline sections cumulatively unless specifically directed otherwise.'" 276 F.3d 1231, 1236 (11th Cir. 2001) (quoting *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1310 (11th Cir. 1999)). That Court also noted that Chapter Two of the guidelines covers "conduct and characteristics", while Chapter Three deals with "victim-related adjustments". *Id*. In other words, the enhancement under § 2K2.1(b)(6)(B) addresses the conduct of a defendant, while the adjustment under § 3A1.2(c) addresses the victim of such conduct.

Other circuits have made similar findings. The Third Circuit has found that double-counting is allowed when the guidelines do not explicitly prohibit it. *See United States v. Fisher*, 502 F.3d 293, 309 (3d Cir. 2007) ("'[O]nly when the Guidelines

4

explicitly prohibit double-counting will it be impermissible to raise a defendant's offense level under one provision when another offense Guideline already takes into account the same conduct.'") (quoting *United States v. Wong*, 3 F.3d 667, 671 (3d. Cir. 1993)).  The Fourth Circuit similarly found in *United States v. Hampton* that double-counting is permissible when the enhancements and adjustments address different considerations for sentencing, rather than different conduct of the defendant.  628 F.3d 654, 664 (4th Cir. 2010) (citing *United States v. Joiner*, 418 F.3d 863, 870 (8th Cir. 2005)).  The Eighth Circuit noted that double-counting is allowed where "'(1) the Sentencing Commission intended the result and (2) each statutory section concerns conceptually separate notions relating to sentencing.'"  *United States v. Hill*, 583 F.3d 1075, 1080 (8th Cir. 2009) (quoting *United States v. Hedger*, 354 F.3d 792, 794 (8th Cir. 2004)).  In the Court's opinion, this case likewise presents circumstances where the circuits have found cumulative application of §§ 2K2.1(b)(6)(B) and 3A1.2(c) to be proper.

At the time of the November 18, 2012 incident, Pettie was a convicted violent felon in possession of a firearm, thus triggering the application of § 2K2.1(a)(4).  Pettie qualified for the four-level enhancement under § 2K2.1(b)(6)(B) because he used the firearm to commit another felony – aggravated assault.  Finally, Pettie qualified for the six-level adjustment under § 3A1.2(c) because he knew or had good reason to know that the people at which he was shooting were law enforcement officers.[2]  These are all

---

[2]  While Pettie contended at sentencing that he did not know the men he was firing upon were Sheriff's deputies, given that the officers were in uniform, their cars were marked with police insignia and reflectors, and Pettie communicated with the officers acknowledging they were law enforcement, the Court did not find this argument persuasive and was instead satisfied that

different considerations for sentencing that the Court could, and did, consider when determining Pettie's sentence.

Lastly, there is no express prohibition in the guidelines against applying §§ 2K2.1(b)(6)(B) and 3A1.2(c) cumulatively.  In fact, the guidelines permit the application of these enhancements and adjustments in a cumulative manner, not to punish the same conduct twice, but to ensure that the level of punishment correlates to the seriousness of the crime.  Accordingly, the Court concludes that the upward enhancement and adjustment provided under §§ 2K2.1(b)(6)(B) and 3A1.2(c) were applicable to reaching Pettie's final sentence.

DONE this the 11th day of June, 2014.

                /s/ Mark E. Fuller
           UNITED STATES DISTRICT JUDGE

---

sufficient evidence existed to warrant applying the six-level upward adjustment under § 3A1.2(c) to Pettie's offense level.